MATTER OF YOUSSEF

In Deportation Proceedings

A-12640176

*Decided by Board May 3, 1965*

A student from the United Arab Republic who came to the United States on a scholarship from his government to do graduate work, having entered into a contract with his government not to marry without permission and to return and work for his government, and who, by his subsequent marriage to a United States citizen without permission, broke the contract, noncompliance with which committed him to refund all money received under the scholarship, is denied adjustment of status under section 245, Immigration and Nationality Act, as amended, as a matter of discretion, in the absence of a showing that his government does not want him back, or that he has made adequate financial arrangements to discharge his obligation to his government, or that he has been relieved of this obligation.

CHARGE:

Order: Act of 1052: Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Remained longer, student.

Respondent is a native and citizen of the United Arab Republic, 25 years of age, who was admitted to the United States on or about December 15, 1960, as a student. He was authorized to remain in this country in student status until November 21, 1963. In August 1964 the Service gave him one opportunity to depart voluntarily, but he failed to depart. Respondent is married to a United States citizen and applied for adjustment of status under section 245 of the Immigration and Nationality Act. The special inquiry officer granted his application. The trial attorney for the Immigration Service appeals from that order. The appeal will be sustained, and the application for adjustment will be denied.

The special inquiry officer reviewed respondent's background in some detail, and we will not repeat that discussion here. Respondent came to the United States on a scholarship from his government for the purpose of doing graduate work in this country. He signed an agreement with the Government of the United Arab Republic that

163

he would not marry without its permission, and that after obtaining a Ph.D. degree he would work for his government for a maximum period of seven years. If he did not comply with these conditions, he agreed to refund all money received by him in the form of salary and expenses while he was under scholarship. The respondent entered the United States on December 15, 1960. In 1961 he wrote the Embassy of the United Arab Republic in Washington, requesting permission to marry, and was informed that it was forbidden by law. On December 22, 1962, he married a United States citizen. On June 23, 1964, the Cultural Attache at his Embassy, Washington, wrote respondent (Ex. 3):

We have received advice from the Missions Department that the Missions Executive Committee has made the decision to end your mission since you have violated the law by marrying a foreigner. You are required to refund all salaries received and other expenses paid for you while under scholarship. I would like to hear from you as soon as you receive this letter.

On July 26, 1964, and again on September 28, 1964, respondent wrote the Embassy of the United Arab Republic in Washington, requesting an itemized statement of all money paid to him while under scholarship. He stated that he was financially unable to repay the money in one lump sum, that he would pay $200 a month until the entire amount was refunded, that he would commence making the monthly payments upon receiving an itemized statement of the money he owed his government. He believes that he owes approximately $10,000. His scholarship paid his tuition at the University of California, and in addition gave him $200 a month for living expenses.

Respondent testified on November 17, 1964, that he had never received an answer to his letters of July and September 1964. He asserted, and counsel stated before the Board, that respondent's agreement allowed him the option of repaying the money to his government and not returning personally, and that there is no basis for a conclusion that respondent wishes to renege on his contractual agreement.

The special inquiry officer stated that he considered himself bound in this matter by *Matter of Wolfe*, Int. Dec. No. 1368 (Acting Reg. Comm., June 23, 1964). He did not agree with *Matter of Wolfe*, stating that if he were to follow his own inclination he would deny adjustment of status, but it would be "presumptuous" for him to act contrary to the Service policy set forth in *Matter of Wolfe*. He said that "scores" of foreign students in the San Francisco District alone are permitted each year to adjust their status to that of permanent residents. Therefore, he granted respondent's application.

In fact, in *Matter of Wolfe*, the Acting Regional Commissioner denied adjustment. Mrs. Wolfe had not made any arrangements for repayment of her obligation to the Iranian authorities, although her husband stated his willingness to repay the money. Therefore her application was rejected, with the suggestion that if she (Mrs. Wolfe) makes "satisfactory arrangements" with the Iranian Government to repay her tuition money and to obtain a release from her commitment, then favorable action in her behalf could be considered. Respondent's case differs from *Wolfe* only in that he made two inquiries of his Embassy, but we do not consider that this constitutes "making mutually satisfactory arrangements". We do not consider *Matter of Wolfe* to be binding on us or in these circumstances. However, our order here is not inconsistent with the order in *Wolfe*.

The Service representative argues that respondent probably would be an "exchange student," and per se ineligible for adjustment, but that we have no exchange program with the United Arab Republic. Therefore, he came not as an exchange student but on a regular student visa.

Counsel contends that if we deny adjustment of status in all of these cases, we are writing a new requirement into section 245, classifying alien students with crewmen as ineligible for adjustment of status, a restriction which was not placed on section 245 by Congress, and ought, therefore, not to be written into the law by the Board. Counsel argues further that under *Mastrapasqua v. Shaughnessy*, 180 F.2d 999 (2nd Cir. 1950), to deny suspension uniformly to any class of aliens is a failure on the part of the Board to exercise its discretion and constitutes an abuse of discretion.

We have considered carefully the various aspects of the instant case, set forth above, and we believe that the alien is now in very nearly the same position as was Mrs. Wolfe. He came to the United States having entered into a contract with his own government, and at this time he has not as yet demonstrated his good faith. The burden is on him to show that he has carried out his part of the agreement. He will reverse the special inquiry officer's decision and withdraw his grant of adjustment of status. This action is without prejudice to respondent's eventually showing that his government does not want him back, or that he has made adequate financial arrangements to discharge his obligation to his government, or that he has been relieved of this obligation. Upon such a showing, he might then qualify for adjustment of status under section 245 of the Immigration and Nationality Act.

ORDER: It is ordered that the appeal of the trial attorney of the Immigration and Naturalization Service be sustained, and that the

order of the special inquiry officer of January 14, 1965, granting the alien adjustment of status under section 245 of the Immigration and Nationality Act be and is hereby withdrawn.

*It is further ordered* that the respondent be given voluntary departure with an automatic order of deportation.

*It is further ordered* that this order be without prejudice to a reopening and reconsideration of respondent's application for adjustment of status if and when he is able to make a further showing as outlined in the order above.